UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ROBERT MCDONALD,                                    Civil Case No. 22-cv-07941

    PLAINTIFF,

-AGAINST-                                           **COMPLAINT**

                                      JURY TRIAL DEMANDED

EDUCATIONAL BUS TRANSPORTATION, INC.,

    DEFENDANT.
-------------------------------------------------------------X

    Plaintiff, ROBERT MCDONALD, by and through his attorney, CHAUNCEY D. HENRY, ESQ. the HENRY LAW FIRM, alleges and complains of the Defendant, as follows:

## **INTRODUCTION**

1. This action is brought against Defendant on the basis of it discriminating against Plaintiff based on account of his race. Defendant engaged in discrimination by inflicting willful and deliberate disparate treatment against Plaintiff during the course of his employment, subjecting Plaintiff to a wrongful demotion for reasons driven by discriminatory animus. Plaintiff was subject to unequal terms and conditions of employment due to his race.

2. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17; Title VII of the Civil Rights Act of 1964 for Disparate Treatment; Title VII of Civil Rights Acts of 1964 for the Disparate Impact Defendants' policies had on Plaintiff and those similarly situated employees within his class; New York State, Executive Law, Article 15, Human Rights Executive Law § 296; Plaintiff seeks to recover monetary damages, equitable relief, reasonable attorney fees, costs, and disbursements resulting from this action.

## **JURISDICTION AND VENUE**

3. Jurisdiction is specifically, and properly, conferred upon this United States District Court by the aforementioned statutes, as well as under 28 U.S.C. §§ 1331, 1343.

4. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983, and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York Law conferred upon this United States District Court by Pendent Jurisdiction.

5. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) in light of the fact that the events described herein all occurred within territorial confines of the Eastern District of New York.

## PROCEDURAL REQUIREMENTS

6. Upon information and belief, the EEOC issued Plaintiff a Determination and Notice of Rights on or about September 28, 2022, permitting Plaintiff to properly bring suit in an appropriate United States District Court pursuant to 42 U.S.C.A. § 2000e and its related state and local laws.

7. Upon information and belief, Plaintiff received the EEOC Notice of Right to Sue letter and commenced the instant action within the statutory ninety (90) day period and has accordingly exhausted all required administrative remedies prior to the commencement of the instant action. Said Right to Sue letter is attached herewith as **Exhibit A**, and is further incorporated herein by reference.

## PARTIES

8. At all times relevant hereto, Plaintiff Robert McDonald, (hereinafter "Plaintiff" or "McDonald") is an African American male residing in the State of New York, with an address of 66 The Boulevard, Amityville, New York 11701.

9. Upon information and belief, during the relevant period herein, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C.A § 2611(2)(A) and at all times relevant in this action.

10. Defendant was an "employer" within the meaning of 29 U.S.C.A § 2611(4)(A) and at all times relevant to this action.

11. Upon information and belief, Defendant, Trans Group, LLC; Educational Bus Transportation (hereinafter "EBT" or "Defendant") is a limited liability company with a principal place of business of 50 Court Street, Copiague, New York 11726.

12. Upon information and belief, during the relevant period herein, the Defendant employed in excess of fifteen (15) employees at any given time, and is an employer within the meaning of Title VII of the Civil Rights Act of 1964.

## **FACTUAL ALLEGATIONS**

I. *Nature of Educational Bus Transportation, Inc. Business*

13. Upon information and belief, Defendant EBT operates a school bus transportation service, serving numerous counties on Long Island, New York, specifically Suffolk and Nassau County. Defendant's headquarters are located at 50 Court Street, Copiague, New York 11726.

II. *Overview of Racial Disparities at EBT*

14. Upon information and belief, during the relevant period hereto, EBT had for years promoted racial disparities within its organization and corporate culture. Although most of the drivers are hispanic and/or african american, the majority if not all of the managerial positions were non-minorities.

15. Managerial positions were often not advertised to minorities within Defendant organization with minorities routinely overlooked for managerial positions they were otherwise qualified to perform or fulfill.

III. *Plaintiff's Employment History with Defendant Educational Bus Transportation Company*

16. Upon information and belief, Plaintiff began his employment with Defendant EBT in the title of Driver and eventually transitioned to the role of Driver-Trainer Supervisor in charge of training bus drivers.

17. In or about 2019, Defendant EBT promoted Plaintiff to the position of Driver-Trainer Supervisor. Plaintiffs position entailed training bus drivers.

IV. *Plaintiff's Membership in a Protected Class Status*

18. Upon information and belief, during the relevant period herein, Plaintiff is an African-American male qualified for the position sought and maintained prior to the events that gave rise to the instant action.

V. *Plaintiff's Qualification for the Position Held*

19. Upon information and belief, during the relevant period hereto, Plaintiff exhibited exemplary performance during his employment and had received commendable employment evaluations.

20. Upon information and belief, prior to the events complained of herein, Plaintiffs employment record was blemish free whereas he had never received a negative evaluation, write-up or suspension prior to the incident complained of herein.

21. Upon information and belief, during the relevant period hereto, Plaintiff served as a bus driver and trainer of new drivers employed by Defendant EBT.

VI. *Plaintiff Subjected to Differing Terms and Conditions of Employment*

    A. *Defendant's Non-African American Employees were treated More Favorably than Its African-American Employees.*

22. Upon information and belief, on or about February 9, 2022, 9:30am, Plaintiff was called into the Safety Office at his work site and directed by Pat to sign 4 blank forms that she had prepared for the Plaintiffs signature and informed him that the forms pertained to an individual that Plaintiff had trained in the Lamar Street Yard which reluctantly signed.

23. Plaintiff was directed to sign blank forms that would have negative implications on his position.

24. Upon information and belief, on or about November 12, 2021, Plaintiff was informed by Pat from Safety that the Director James Rogan and Adrienne from Safety investigation concluded that Plaintiff could no longer train drivers as a result of an alleged motor vehicle accident where Plaintiff was rear ended while operating a school bus during his route. This in essence amounted to a demotion both in rank, seniority and compensation.

25. Prior to, Plaintiff had trained drivers for many years and had only earned regular pay rate, instead of the standard personnel pay rate received by his non-minority counterparts for the same or similar work. Following the demotion, Plaintiff was removed from the bus yard and precluded from training bus drivers.

26. Upon information and belief, during the relevant period hereto, Plaintiff later learned that non-minorities or those outside of his protected-class were treated differently, and permitted to remain in their positions and/or promoted following severe, if not worse, infractions than the rear-end collision that saw Plaintiff demoted.

27. Upon information and belief, Plaintiff discovered that non-minority employees were treated differently than he was following an accident, specifically, Plaintiff learned that Director James Rogan had appointed Gloriann (White Female) to the position of Safety Department Supervisor despite Gloriann having operated a commercial bus on the Southern State Parkway in violation of both company policy and well established motor vehicle laws and with less than two (2) years of experience with Defendant EBT.

28. Furthermore, upon information and belief, Plaintiff later discovered that Michelle (White Female) was allowed to remain in the position of Safety Supervisor despite having totalled a Safety Vehicle.

29. Plaintiff also learned that Adrienne (White Female) was promoted to Safety Supervisor despite having been involved in a motor vehicle accident with a school bus that resulted in the death of a motorist.

30. On or about February 7, 2022, Plaintiff discovered that Deanna (White Female) was involved in a motor vehicle accident, however on the very next day she was permitted to dispatch although contrary to company policy.

31. Upon information and belief, during the relevant period hereto, Defendant EBT conducted sham investigations into infractions or so-called violations committed by its minority class of employees which included the Plaintiff.

32. By way of example, minority employees were never provided a copy of disciplinary findings nor provided a copy of any official business forms that required their signature.

33. Upon information and belief, minority employees are prohibited from reviewing their personnel records and often not included or notified of managerial job postings by Defendant EBT.

34. Upon information and belief, Defendant EBT minority employees are paid less and allocated less work hours per day/shift than their non-minority counterparts that perform the same or similar work.

35. Upon information and belief, shortly after Plaintiffs' wrongful demotion, he raised concerns with Defendant EBT that he felt minority employees were treated unfairly and differently than their non-minority counterparts. As a result, on or about January 18, 2022, Plaintiff was directed by Defendant EBT that he needed to report to the Safety Office to undergo an annual written examination. Following the examination, Defendant EBT supervisor Pat directed Safety Supervisor Liz to escort Plaintiff along with another driver to perform an annual road examination. Although Liz reviewed the computer and advised Pat that Plaintiff was not due for a written examination or road test until September 2022, Plaintiff was still required to undergo an unnecessary written examination meanwhile Defendant EBT's non-minority employees were required to undergo written examination or road test before their appointed date.

    B. *Defendant's Failure to Train Plaintiff for his Supervisory Position Prior to His Demotion*

36. Upon information and belief, during Plaintiff's time as a Safety Supervisor, Defendant failed to provide Plaintiff with comprehensive training regarding his position, however viewed Plaintiff's lack of knowledge or expertise in areas that he should have been trained as a negative factor that impacted his overall job performance.

37. Upon information and belief, as a result of the foregoing, Plaintiff has not been promoted and/or reassigned to the supervisor position and currently holds the position of bus operator.

# DAMAGES

38. As a result of Defendant's acts and/or omissions, Plaintiff was meant to endure considerable financial losses and emotional damages, a reduction in retirement benefits, diminution of pension benefits, earnings, and other fiscal/financial benefits of employment, health insurance and bonuses.

39. Plaintiff is entitled to an award consisting of back pay, front pay, emotional damages and attorney fees, all occurring as a result of Defendant's discriminatory employment practices, unreasonable, oppressive, willful and malicious acts and/or omissions as committed against Plaintiff hereto.

*Federal Causes of Action*

### COUNT I

**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. §2002, ET. SEQ.: DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT**

40. Plaintiff repeats and reiterates the allegations set forth in paragraph 1 through 39 inclusive of the instant complaint, with the same force, effect and veracity as though fully set forth hereto.

41. It shall be unlawful for an Employer to fail or refuse to hire or to discharge any individual or otherwise discrimination against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42. Defendant, as Plaintiff's employer, by and through its agents and employees, discriminated against Plaintiff with respect to Plaintiff's terms, conditions or privileges of employment, because of Plaintiff's race and/or other protected status.

43. Plaintiff was allegedly demoted as a result of a rear-end collision in which the company vehicle he had operated at the time was struck by another motor vehicle due to no fault of his own. Defendant EBT concluded that due to the accident, Plaintiff had not demonstrated the level of prudence or safety needed to train other drivers.

44. Defendant EBT's explanation for its demotion of the Plaintiff is wholly pretextual, as Defendant EBT's similarly situated non-African-American employees that were involved in more severe motor vehicle accidents in which they were responsible in whole or part, were permitted to remain in their position as Safety Supervisors or promoted thereto despite having failed to follow company policy or traffic rules and regulation. Plaintiff was not afforded the full protections of Defendant EBTs employment policy.

45. Defendant's similarly situated Safety Supervisors that were not members of Plaintiff's protected class were permitted to enjoy and maintain their position as Supervisor, however Plaintiff was meant to suffer a demotion or adverse change in the terms and conditions of his employment.

46. During the relevant period hereto, Plaintiff was subject to hostility and heightened scrutiny of his employment at the hands of Defendant's supervisory employee due to his race.

47. As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of income; loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, embarrassment, great financial expense, and damages to his reputation.

48. As a result of Defendant's acts and/or omissions, Plaintiff is entitled to the maximum monetary damages and penalties available by law, as well as costs and attorney fees, the sum to be determined at trial.

COUNT II

**DISPARATE TREATMENT UNDER TITLE VII OF
THE CIVIL RIGHTS ACT OF 1964: FAILURE TO PROMOTE**

49. Plaintiff repeats and reiterates the allegations set forth in paragraph 1 through 48 inclusive of the instant complaint, with the same force, effect and veracity as though fully set forth hereto.

50. It shall be unlawful for an Employer to limit, segregate, or classify its employees in any way, which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

51. Defendant through its agents and/or supervisory employees, discriminated against the Plaintiff in his employment based upon Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, as amended.

52. Plaintiff was subject to disparate treatment during the course of his employment under Defendant. Defendant, by and through its agents and/or administrators, discriminated against Plaintiff with respect to the terms, conditions, or privileges of employment due to Plaintiff's race and color.

53. Defendant's similarly situated non-African-American employees were treated more favorably than Plaintiff although having willfully violated Defendant's employee policy.

54. Prior to his demotion, Plaintiff was not given an opportunity to correct any perceived shortcomings in the performance of his duties.

55. Several of Defendant's non-minority employees were given an opportunity to advance in their career with Defendant EBT despite having been in accidents that were due in part to their negligence, an opportunity that was not afforded to Plaintiff.

56. Defendant, by and through its agents and/or employees, attempted to, and succeeded in, demoting the Plaintiff for reasons fueled by discriminatory animus, while having no legitimate basis to do so.

57. Defendant subjected Plaintiff to increased job scrutiny in comparison to Plaintiff's non-minority counterparts.

58. Plaintiff's non-minority counterparts were treated more favorably than Plaintiff during the course of his employment with the Defendant with respect to the enforcement of several of Defendant's employment policies regarding training and promotion.

59. Defendant wrongfully and unjustly demoted Plaintiff's employment for pretextual reasons fueled by discriminatory animus.

60. As a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer, loss of employment, loss of income, loss of other employment benefits, promotional opportunities as well as emotional distress, great financial expense, damage to his reputation, and has incurred damages thereby.

61. As a direct result of Defendants act and/or failure to act, Plaintiff is entitled to the maximum monetary damages and penalties available by law, plus costs and reasonable attorney fees.

COUNT III

**DISPARATE IMPACT UNDER
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

62. Plaintiff repeats and reiterates the allegations set forth in paragraph 1 through 61 inclusive of the instant complaint, with the same force, effect and veracity as though fully set forth hereto.

63. Defendants' employment policies and its application, although neutral on its face, adversely impact African-American (minority) employees.

64. Defendant's uneven application of its facially neutral policy concerning promotion has the effect of foreclosing available employment opportunities to qualified minorities.

65. Defendant's minority employees are promoted less frequently than similarly situated non-minority employees. Defendant's employment policies or practices, although seemingly race neutral, have the effect of creating a disparity between the promotion of otherwise qualified minority individuals.

66. Plaintiff was adversely impacted –wrongfully demoted – by and as a direct result of Defendants' uneven application of its employment policies.

67. As a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer, loss of employment, loss of income, loss of other employment benefits, promotional opportunities as well as emotional distress, great financial expense, damages to reputation, and has incurred damages thereby.

68. As a direct result of Defendant's act and/or failure to act, Plaintiff is entitled to the maximum monetary damages and penalties available by law, equitable remedies, plus costs and reasonable attorney fees.

*State Causes of Action*

## COUNT IV

**NEW YORK STATE, EXECUTIVE LAW
ARTICLE 15, HUMAN RIGHTS EXECUTIVE LAW § 296**

69. Plaintiff repeats and reiterates the allegations set forth in paragraph 1 through 69 inclusive of the instant complaint, with the same force, effect and veracity as though fully set forth hereto.

70. The New York State Executive Law; Human Rights Law ("NYSHRL") prohibits unlawful discriminatory employment practices. Section § 296 of the NYSHRL, provides in pertinent part that, "[I]t shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

71. As a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer, loss of employment, loss of income, loss of other employment benefits, promotional opportunities as well as emotional distress, great financial expense, damages to reputation, and has incurred damages thereby.

72. As a direct result of Defendant's act and/or failure to act, Plaintiff is entitled to the maximum monetary damages and penalties available by law, equitable remedies, plus costs and reasonable attorney fees.

COUNT V

**BREACH OF IMPLIED DUTY OF
GOOD FAITH AND FAIR DEALING**

73. Plaintiff repeats and reiterates the allegations set forth in paragraph 1 through 73 inclusive of the instant complaint, with the same force, effect and veracity as though fully set forth hereto.

74. Defendant extended an offer of employment to Plaintiff, which carried with it, the expressed and implied promises that Plaintiff would be treated fairly and in good faith and not discriminated against due to his race, color, and/or national origin during the course of her employment with the Defendant.

75. Plaintiff accepted the offer of employment and its implied promises at the time of employment.

76. Defendants' implied promises carried with it a duty of good faith and fair dealing in its handling of Plaintiff's employment

77. Defendant, by and through its agents and/or employees, breached its duty to Plaintiff under the implied contract when it discriminated against Plaintiff due to his race and/or color and wrongfully demoted Plaintiff for pretextual reasons.

78. As a direct result of Defendant's act and/or failure to act, Plaintiff is entitled to the maximum monetary damages and penalties available by law, equitable remedies, plus costs and reasonable attorney fees.

### JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38(b) of the Local Rules, Plaintiff demands trial by jury for all the issues led herein so triable.

WHEREFORE, Plaintiff prays that this Court grant judgment to him containing the following relief:

a. An award to Plaintiff of his actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of front pay compensating Plaintiff for loss of future salary and benefits;

b. Declaring that Defendant violated Title VII of Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 for the discrimination in terms and conditions of employment;

c. Declaring that Defendant violated Title VII of the Civil Rights Act of 1964 for Disparate Treatment (Failure to Promote);

d. Declaring that Defendant violated Title VII of Civil Rights Acts of 1964 for the Disparate Impact the application of its policies had on Plaintiff and those similarly situated employees;

e. Equitable relief;

f. Declaring that Defendant violated New York State, Executive Law, Article 15, Human Rights Executive Law § 296;

g. Declaring Defendant in violation of applicable State laws for Breach of Implied Duty of Good Faith and Fair Dealing;

h. Awarding damages to Plaintiff, retroactive to the date of his demotion and prior to, for loss of wages and benefits resulting from Defendant's unlawful employment practices and to otherwise render him whole for all and any losses sustained and suffered as a result of Defendant's unlawful employment practices;

i. An award to Plaintiff of the costs of this action, together with reasonable attorney fees; interest and the cost of disbursements of the action; and

j. Such other and future relief that this Honorable Court deems just and proper.

Dated: Mineola, New York
December 28, 2022

                                                HENRY LAW
/s/
By: CHAUNCEY D. HENRY, ESQ.
*Attorney for Plaintiff,*
*Robert McDonald*
300 Old Country Road, Suite 241
Mineola, New York 11501
Phone: (516) 366-4367
Email: chauncey.henry@hlawg.com